Filed 9/10/24  Winton-Ireland Insurance Agency v. Pallante CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WINTON-IRELAND INSURANCE AGENCY, INC., | F086354 |
| Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. CV64853) |
| v. | |
| SARAH PALLANTE et al., | **OPINION** |
| Defendants, Cross-complainants and Respondents. | |

APPEAL from a judgment of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Buchalter, Dylan W. Wiseman and Harry W.R. Chamberlain II, for Plaintiff, Cross-defendant, and Appellant.

Downey Brand, Anthony L. Vignolo, Alexandra K. LaFountain, for Defendants, Cross-complainants, and Respondents.

-ooOoo-

Winton-Ireland Insurance Agency, Inc. (Winton-Ireland) sued Glenn S. Caldwell Insurance Services, Inc. (Caldwell) and Sarah Pallante. Pallante, a former employee of Winton-Ireland, is an account manager for Caldwell. Winton-Ireland brought a trade secret misappropriation action based on a communication Pallante sent to a number of Winton-Ireland clients after starting her employment with Caldwell.

While the matter was pending, Caldwell and Pallante filed a cross-complaint alleging that Winton-Ireland had breached a settlement agreement the parties had reached in the trade secret misappropriation matter.

Winton-Ireland responded by filing a special motion to strike the cross-complaint under California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (anti-SLAPP motion). (Code Civ. Proc., § 425.16.)[1] The trial court denied Winton-Ireland's anti-SLAPP motion and Winton-Ireland appealed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The trial court, Retired Judge Donald Segerstrom (sitting by assignment in the Tuolumne County Superior Court), heard Winton-Ireland's anti-SLAPP motion on March 10, 2023. The court denied the motion in a written order after hearing issued on April 14, 2023.

The trial court's written order after hearing succinctly summarized the factual and procedural background relevant to Winton-Ireland's anti-SLAPP motion. We adopt the trial court's summary of the applicable factual and procedural background and reproduce it here (footnote is not in the original):

"The instant case is a dispute between two insurance agencies. [Sarah] Pallante was an employee of Winton-Ireland who left that employment. She subsequently went to work for Caldwell. Shortly after starting to work for Caldwell, she sent a correspondence

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

to 16 or 17 of her former clients at Winton-Ireland, which Winton-Ireland alleges was an improper solicitation, breach of a confidentiality agreement and a misappropriation of trade secrets.[2] On or about March 1, 2022, Winton-Ireland sent Pallante and Caldwell a cease-and-desist letter. Counsel at the time for Pallante and Caldwell responded with a letter essentially denying any breach of [confidentiality] agreement or wrongdoing. Winton-Ireland responded with a letter disagreeing with the analysis set forth by Pallante and Caldwell's then counsel. Winton-Ireland then filed a complaint against Pallante and Caldwell in the Stanislaus County Superior Court on April 1, 2022, alleging four counts: trade secret misappropriation; unfair competition; breach of contract and intentional interference with contract. A motion seeking a preliminary injunction was scheduled for May 20, 2022."

"Current counsel for Pallante and Caldwell then became involved and settlement negotiations commenced. Written settlement proposals went back and forth between the attorney's offices. A May 3, 2022 email from counsel for Pallante and Caldwell to counsel for Winton-Ireland contained a four-part settlement proposal. A response from counsel for Winton-Ireland on May 4, 2022, contained a four-part settlement demand. On May 5, 2022, counsel for Pallante and Caldwell sent an email agreeing to 3 of the 4 parts of the May 4th settlement demand, but disagreeing to the payment of attorney's fees. Later on May 5th, counsel for Winton-Ireland responded with an email which contained the following sentence: 'That being said, we accept Defendants' proposal and

---

[2] Sarah Pallante resigned from Winton-Ireland during a period of maternity leave. She sent the communication at the heart of the dispute in this matter after she subsequently began working for Caldwell. The communication at issue was an email that stated, in pertinent part: "I took some much-needed time off to enjoy the new mom life and soak up all the newborn snuggles. I am now back to work but have relocated to an agency in Sonora. I am now at Caldwell Insurance Services. I truly missed working and all my former clients. Hopeful that in the future we can work together again. I would love to reconnect, so I will be reaching out in the next few weeks."

Phil will draw up the settlement agreement, the two declarations, and the stipulated judgment containing an attorneys' fees clause.' On May 17, 2022, counsel for Winton-Ireland filed a 'Notice of Settlement of Entire Case' in the Stanislaus County Superior Court, which stated the settlement agreement conditioned dismissal of the matter on completion of items that were not to be performed within 45 days. The Notice informed the Court that a Request for Dismissal would be filed no later than July 1, 2022. The Motion for Preliminary Injunction was taken off calendar."

"As is apparent from the continued existence of this litigation, the settlement agreement referenced in the 'Notice of Settlement of Entire Case' did not result in a dismissal. Instead, after exchanging various settlement documents, counsel for Winton-Ireland sent an email on July 8, 2022, stating in part: 'Our client no longer remains interested in settling. This has taken way too long, and Defendants' unwillingness to admit to the solicitation issue proved to be [un]acceptable by Winton-Ireland's ownership group. [¶] We hereby rescind the settlement proposal.' … Approximately one-half hour later, counsel for Pallante and Caldwell responded with an email that stated, in part: 'I'm not sure what has changed since [a prior email], and it's quite clear to me that an agreement has already been formed. Attempting to change paths after my client has incurred significant attorneys' fees in reaching that agreement will now expand the litigation into a motion to enforce the settlement and/or a cross-complaint for breach of the settlement.' "

"This email exchange [led] to the renewal of the Motion for Preliminary Injunction by Winton-Ireland on July 20, 2022. In response, Pallante and Caldwell filed a Motion to Change Venue to transfer the case to Pallante's county of residence, Tuolumne County. On August 31, 2022, that motion was granted by the Stanislaus County Superior Court and the matter was ordered transferred to Tuolumne County. Thereafter, on November 7, 2022, Pallante and Caldwell filed the Cross-Complaint which

is the subject of the … instant motion[].  The Cross-Complaint set forth four causes of action:  Breach of Contract; Declaratory Relief (existence of a settlement agreement); Declaratory Relief (dismissal [of Winton-Ireland's complaint]); and Injunction.…  On January 9, 2023, Winton-Ireland filed its Special Motion to Strike the Cross-Complaint Under California Code of Civil Procedure § 425.16.  (The 'Anti-SLAPP Motion.')  Following the filing of voluminous points and authorities and declarations, the hearing on the motions was held [on March 10, 2023]."

## **TRIAL COURT'S RULING ON THE MERITS**

In addressing the merits of Winton-Ireland's anti-SLAPP motion, the trial court first set forth the legal framework for analyzing anti-SLAPP motions.  The court stated:

> "Code of Civil Procedure section 425.16, subdivision (b)(1) provides a special motion to strike a cause of action brought against a person 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue….'  'Anti-SLAPP motions are evaluated through a two-step process.  Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims arise from protected activity in which the defendant has engaged.  If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least minimal merit.'  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.)  [Internal quotations and citations omitted.]  If the plaintiff cannot make this showing, the court will strike the claim.  In assessing whether a plaintiff has shown its claims have 'minimal merit,' 'the court does not weigh evidence or resolve conflicting factual claims but rather accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'  (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 148.)  [Internal quotations and citations omitted.]"

The court next summarized the parties' arguments.  With respect to Winton-Ireland's position, the court observed:  "Winton-Ireland's argument on the Anti-SLAPP motion is essentially that it was negotiating with Pallante and Caldwell to resolve the pending litigation in Stanislaus County.  It contends the settlement negotiations were a

5.

protected activity. It points to the proposed settlement agreement which requires the agreement to be executed and argues it was never signed by any party. When questioned at oral argument as to why it filed a 'Notice of Settlement of Entire Case' with the Stanislaus County Court, Winton-Ireland stated it had a 'reasonable expectation that they were going to try and settle.' Winton-Ireland argues that Pallante and Caldwell admitted filing the Cross-Complaint to end the litigation. In sum, Winton-Ireland argues that Pallante and Caldwell sued them for negotiating."

As for Pallante and Caldwell's contentions, the trial court noted: "Pallante and Caldwell, on the other hand, argue that the Cross-Complaint does not seek to chill Winton-Ireland's speech in negotiating a settlement agreement. Rather, they assert that a settlement agreement had been reached and they are simply trying to enforce that agreement. According to Pallante and Caldwell, the settlement agreement fell apart when Winton-Ireland attempted to interject a new term (admission of a solicitation) that was not part of the agreement. In Pallante and Caldwell's view, they are suing for breach of the settlement agreement which they contend does not involve protected activity. They agree the statements made during the negotiations are protected, but the gravamen of the Cross-Complaint is breach of contract, which is not protected."

The court then analyzed the issues. The court stated:

> "Applying the two-part analysis, the first step is to determine whether the causes of action alleged in the Cross-Complaint by Pallante and Caldwell arise from protected activity by Winton-Ireland. Pallante and Caldwell correctly concede that settlement negotiations while a lawsuit is pending involve protected activity. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024.) They argue, however, that a breach of a valid settlement agreement is not a protected activity and not subject to an Anti-SLAPP motion. On this point, the Court agrees. (See, *Wong v. Wong* (2019) 43 Cal.App.5th 358, 365.) Thus, this Court must examine each cause of action in the Cross-Complaint and 'consider the elements of the challenged claim and what actions by the [cross-]defendant supply those elements and consequently form the basis for liability.' (*Park v. Board of*

*Trustees of California State University*, *supra*, 2 Cal.5th at p. 1063.) This is because 'a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' (*Id.* at p. 1060.) [Italics in original.]

"The first cause of action set forth in the Cross-Complaint is for breach of contract. The alleged breach occurred when Winton-Ireland 'attempted to include terms and conditions in the settlement documents that were inconsistent with the May 5 settlement. Alternatively, Winton-Ireland breached the Final Settlement Agreement when, by email of July 6, 2022, it fabricated an excuse [in] an attempt to repudiate the Final Settlement Agreement.' (Cross-Complaint, ¶ 36.) … Since the alleged breach consisted of communications from Winton-Ireland that occurred <u>after</u> the alleged settlement agreement had been reached, the breach itself would appear to be a protected communication.

"The second cause of action is for Declaratory Relief. This cause of action seeks a declaration that the parties entered into a binding settlement agreement on May 5 or thereafter on July 5, the date of the 'Final Settlement Agreement.' This cause of action asks only for a declaration that the parties had reached an enforceable settlement agreement. Since Winton-Ireland filed a 'Notice of Settlement of Entire Case' on May 17, 2022, this would tend to indicate that a settlement agreement had been reached. While any such agreement would have been arrived at following negotiation communications between the parties, the cause of action itself only involves the <u>existence</u> of an agreement. As such, this cause of action does not appear to complain of protected activity.

"The third cause of action is styled as one for Declaratory Relief that Winton-Ireland's complaint is 'improper as barred and otherwise having been fully and finally resolved by the May 5 Settlement and/or the Final Settlement Agreement.' (Cross-Complaint, ¶ 47.) While the Court has some difficulty understanding how this allegation differs from that in the second cause of action, it appears that Pallante and Caldwell are complaining that Winton-Ireland is continuing to sue them. As the act complained of is the act of maintaining a lawsuit, it appears this cause of action does involve protected activity.

"The fourth and final cause of action is for an injunction, to prohibit Winton-Ireland from 'continuing to maintain this action….' (Cross-Complaint, ¶ 51.)  For the same reason as set forth above as to the third cause of action, it appears that the right to maintain a lawsuit is a protected activity.

"Having determined that the first, third and fourth causes of action arise from protected activity, the Court must then turn to the second prong of the analysis and determine whether the Cross-Complainant has demonstrated that their claims have 'minimal merit.'  The Court answers this question in the affirmative.  The evidence presented in the declarations submitted by Pallante and Caldwell shows that on May 5, 2002, counsel for Winton-Ireland conveyed an unequivocal acceptance of 'Defendant's proposal' and agreed to draft a 'settlement agreement.'  Such an agreement was indeed drafted.  Winton-Ireland then filed a 'Notice of Settlement of Entire Case' and notified the Court and the opposing parties that the dismissal would be filed no later than July 1, 2022.  Winton-Ireland's evidence that the agreement did not address the issue of solicitation and that the Final Settlement Agreement was not executed do not defeat the claims in the Cross-Complaint as a matter of law.  An exchange of emails can constitute a binding settlement agreement, even if the parties agree to prepare a later, written memorialization of that agreement.  (See, *J.B.B. Investment Partners, Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 11-12.) ['When parties intend that an agreement is binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement.'].)  Setting aside the question of who will ultimately prevail on the issues presented in the Cross-Complaint, Pallante and Caldwell have at least met the requirement that their claims have 'minimal merit' sufficient to defeat the anti-SLAPP motion.  The motion must therefore be denied."[3]

---

[3]  On the issue of attorney fees under the anti-SLAPP statute, the court ruled:

"Both parties request an award of attorney's fees on the Anti-SLAPP motion.  As Winton-Ireland did not prevail on their motion, they are not entitled to recover attorney's fees.  (Code of Civ. Proc., § 425.16, subd. (c)(1).)  The Court further finds the Anti-SLAPP motion was not frivolous or solely intended to cause unnecessary delay and therefore Pallante and Caldwell are not entitled to an award of attorney's fees for prevailing on the anti-SLAPP motion.  (Code of Civ. Proc., § 425.16, subd. (c)(1).)  For those reasons, the respective requests for an award of attorney's fees on the Anti-SLAPP motion alone are denied."

8.

## DISCUSSION

### I. The Trial Court Properly Denied Winton-Ireland's Anti-SLAPP Motion

Winton-Ireland argues the trial court erred in denying its anti-SLAPP motion and refusing to strike Caldwell and Pallante's cross-complaint. We disagree and affirm.

#### A. *The Anti-SLAPP Statute and Standard of Review*

The anti-SLAPP statute, section 425.16, provides a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.) "When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process." (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1543 (*Hansen*); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

The first prong of the anti-SLAPP analysis requires the court to decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon*, *supra*, 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) The defendant makes this showing by demonstrating the acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1); *Equilon*, at p. 67.) To ensure that participation in matters of public significance is not chilled, the anti-SLAPP statute mandates that its terms "shall be construed broadly." (§ 425.16, subd. (a); *Equilon*, at p. 60; see *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 23 ["The Legislature inserted the 'broad construction' provision out of concern that judicial decisions were construing [the public participation] element of the statute too narrowly."].)

9.

If the court determines the defendant has made the threshold showing, "it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*); § 425.16, subd. (b)(1).) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) To establish the requisite probability of prevailing, the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 (*Briggs*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*); *Navellier*, at pp. 88-89.)

We review both prongs of the anti-SLAPP analysis de novo. (*Hansen*, *supra*, 171 Cal.App.4th at p. 1544.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."[4] (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

## B.   *"Arising From Protected Activity" Prong*

We agree with the trial court's analysis with respect to the anti-SLAPP statute's first prong, that is, the "arising from protected activity" prong. While properly noting that settlement negotiations that take place during the pendency of a lawsuit "involve

---

[4] Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

protected activity" (see *Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1024), the trial court correctly concluded that "breach of a valid settlement agreement is not a protected activity" (see *Wong v. Wong*, *supra*, 43 Cal.App.5th at pp. 362-363, 364-365). The trial court next examined each cause of action in Caldwell and Pallante's cross-complaint to identify whether the wrong complained of *itself* represented speech or petitioning activity or whether, to the extent any speech or petitioning activity was implicated, it was merely evidence of another, separate wrong. (See *Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1063.) We will do the same.

### (i) Cross-Complaint's First Cause of Action: Breach of Contract

Starting with the first prong of the anti-SLAPP analysis, we consider "whether [Winton-Ireland] has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon*, *supra*, 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) This in turn requires us to consider whether the causes of action in Caldwell and Pallante's present cross-complaint arose from acts taken by Winton-Ireland in furtherance of its "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

Section 425.16, subdivision (e), elaborates on what conduct constitutes an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e).) As pertinent here, such conduct includes "any written or oral statement or writing made before a … judicial proceeding." (§ 425.16, subd. (e)(1); see *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 886-887 ["statements made in anticipation of a court action" as well as "statements made after the commencement of such a proceeding" are entitled to protection under the anti-SLAPP statute]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 17; *Briggs*, *supra*, 19 Cal.4th

11.

at p. 1115 [filing a lawsuit constitutes an exercise of a party's constitutional right of petition].)

The first cause of action in the cross-complaint is for breach of contract. The cross-complaint alleges, with respect to the first cause of action, that "the email exchanges between the parties' counsel on May 4, 2022, and May 5, 2022, included all material terms necessary to form a legally binding and enforceable contract for a full and final settlement of the Action, and that such binding and enforceable contract was formed when Winton-Ireland's counsel agreed to 'accept Defendants' proposal' on May 5, 2022, resulting in the May 5 Settlement." The cross-complaint further alleges: "Alternatively, Cross-Complainants are informed and believe, and thereon allege, that a legally binding and enforceable contract for a full and final settlement of the Action was formed through the email exchanges between the parties' counsel on July 5, 2022, through which Caldwell's counsel informed Winton-Ireland's counsel that 'the Settlement Agreement looks fine, please send the entire Settlement Agreement with exhibits to my office and I will have my clients come in and sign,' in response to which Winton-Ireland's counsel, by email correspondence of the same date, July 5, 2022, at 4:37 p.m., sent to Caldwell's [counsel] two pdf documents, one entitled 'Settlement Agreement – c (Final)' and the other entitled 'ATTORNEYS EYES ONLY – Client List,' thereby resulting in the Final Settlement Agreement."

Finally, as to the first cause of action, the cross-complaint alleges: "Winton-Ireland breached the May 5 settlement when it thereafter attempted to include terms and conditions in the settlement documents that were inconsistent with the May 5 Settlement. Alternatively, Winton-Ireland breached the Final Settlement Agreement when, by email of July 6, 2022, it fabricated an excuse [in] an attempt to repudiate the Final Settlement Agreement."

In the cross-complaint's first cause of action, Caldwell and Pallante complain that Winton-Ireland's communications regarding the scope or finality of any settlement previously reached, constituted a breach of such settlement. However, " '[u]nder the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute.' " (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 408-409, quoting *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479-480.) The trial court concluded, with regard to the first cause of action: "Since the alleged breach consisted of communications from Winton-Ireland that occurred <u>after</u> the alleged settlement agreement had been reached, the [alleged] breach itself would appear to be a protected communication." In light of the dispute between the parties as to the scope or finality of any settlement agreement, we agree with the trial court that the first cause of action appears to involve protected activity.

### (ii)    Cross-Complaint's Second Cause of Action:  Declaratory Relief

The cross-complaint's second cause of action is for declaratory relief. Specifically, as to the second cause of action, the cross-complaint states: "An actual controversy exists between Cross-Complainants and Winton-Ireland relative to the enforceability of the May 5 Settlement and the Final Settlement Agreement.  [¶ ]…Cross-Complainants desire a judicial determination, which is necessary and appropriate at this time, that the May 5 Settlement and/or the Final Settlement Agreement is or are binding and enforceable."

Thus, as the trail court noted:  "This cause of action seeks a declaration that the parties entered into a binding settlement agreement on May 5 or thereafter on July 5, the date of the 'Final Settlement Agreement.'  This cause of action asks only for a declaration that the parties had reached an enforceable settlement agreement."  The trial court

13.

correctly reasoned: "Since Winton-Ireland filed a 'Notice of Settlement of Entire Case' on May 17, 2022, this would tend to indicate that a settlement agreement had been reached. While any such agreement would have been arrived at following negotiation communications between the parties, the cause of action itself only involves the existence of an agreement. As such, this cause of action does not appear to complain of protected activity." We agree with the trial court.

### (iii) Cross-Complaint's Third Cause of Action: Declaratory Relief— Dismissal

The cross-complaint's third cause of action is also for declaratory relief. Specifically, as to the third cause of action, the cross-complaint states: "An actual controversy exists between Cross-Complainants and Winton-Ireland relative to the propriety of the continuance of the Action in light of the May 5 Settlement and Final Settlement Agreement. [¶]… Cross-Complainants desire a judicial determination, which is necessary and appropriate at this time, that [Winton-Ireland's underlying] action is improper as barred and otherwise having been fully and finally resolved by the May 5 Settlement and/or Final Settlement Agreement."

With regard to the cross-complaint's third cause of action, the trial court observed: "While the Court has difficulty understanding how this allegation differs from that in the second cause of action, it appears that Pallante and Caldwell are complaining that Winton-Ireland is continuing to sue them." The trial court concluded: "As the act complained of is the act of maintaining a lawsuit, it appears this cause of action does involve protected activity." We agree with the trial court.

### (iv) Cross-Complaint's Fourth Cause of Action: Injunction

With regard to the fourth cause of action, the trial court stated: "The fourth and final cause of action is for an injunction, to prohibit Winton-Ireland from 'continuing to maintain this action….' [Citation.] For the same reason as set forth above as to the third

14.

cause of action, it appears that the right to maintain a lawsuit is a protected activity."
Once again, we agree with the trial court.

### C. *"Probability of Prevailing" Prong*

Given that Winton-Ireland (the moving cross-defendant) carried its burden—at least with respect to the first, third, and fourth causes of action in the cross-complaint—to show that the challenged claims arise from protected activity in which Winton-Ireland had engaged, next cross-complainants must demonstrate that these claims have at least " 'minimal merit.' " (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1061.) In assessing the non-moving party's minimal-merit showing, " '[t]he court does not weigh evidence or resolve conflicting factual claims … [but rather] accepts the plaintiff's [or cross-complainants'] evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.' " (*Dziubla v. Piazza*, *supra*, 59 Cal.App.5th at p. 148.)

Here, the trial court concluded as to the second prong of the anti-SLAPP analysis: "Setting aside the question of who will ultimately prevail on the issues presented in the Cross-Complaint, Pallante and Caldwell have at least met the requirement that their claims have 'minimal merit' sufficient to defeat the Anti-SLAPP motion." We agree with the trial court.

As noted by the trial court, "[t]he evidence presented in the declarations submitted by Pallante and Caldwell shows that on May 5, 20[22], counsel for Winton-Ireland conveyed an unequivocal acceptance of 'Defendant's proposal' and agreed to draft a 'settlement agreement.' Such an agreement was indeed drafted. Winton-Ireland then filed a 'Notice of Settlement of Entire Case' and notified the Court and the opposing parties that the dismissal would be filed no later than July 1, 2022." We agree with the trial court that "Winton-Ireland's evidence that the agreement did not address the issue of solicitation and that the Final Settlement Agreement was not executed[,] [does] not defeat

the claims in the Cross-Complaint as a matter of law." Moreover, as the trial court pointed out, "[a]n exchange of emails can constitute a binding settlement agreement, even if the parties agree to prepare a later, written memorialization of that agreement." (See *J.B.B. Investment Partners, Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 11-12 [" 'When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement.' "].)

We conclude that Caldwell and Pallante have met their burden to show that the first, third, and fourth causes of action in the cross-complaint have at least minimal merit. Accordingly, we affirm the trial court's denial of Winton-Ireland's anti-SLAPP motion.

## DISPOSITION

The trial court's order denying Winton-Ireland's anti-SLAPP motion is affirmed. Each side to bear its own costs on appeal.

SMITH, Acting P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

16.