Filed 9/25/24  Doe v. Santa Clara University CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JANE DOE, | H050798 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 22CV397478) |
| v. | |
| SANTA CLARA UNIVERSITY, | |
| Defendant and Respondent. | |

**THE COURT**[*]

Jane Doe was an adjunct lecturer at Santa Clara University (SCU) from 2016 to 2018.  In April 2022, nearly four years after her employment with SCU ended, Doe sued SCU, asserting race, sex, and gender discrimination, harassment, hostile work environment, and other claims.  SCU filed a demurrer, which the trial court sustained, primarily on the ground that Doe's claims were not timely filed.  The trial court also denied Doe leave to amend and entered judgment.  Representing herself, Doe appeals.  For the reasons explained below, we affirm.

---

[*]  Before Grover, Acting P. J.; Lie, J.; and Bromberg, J.

# I. Background

## A. Doe's Appointment

Doe was appointed as an adjunct lecturer at SCU several times. The first appointment was for the 2016-2017 academic year, in which she was hired to teach seven courses over the full year. Doe also was appointed for the 2017-2018 winter quarter, apparently for two courses, and for the 2017-2018 spring quarter, apparently for one course. The last appointment ended June 15, 2018.

## B. Doe's Allegations

In her first amended complaint, Doe alleges the following facts, which we take as true for purposes of assessing the demurrer. (See, e.g., *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662.)

### 1. Winter 2018

Doe is an Asian-American woman. In February 2018, she began experiencing headaches, dizziness, blurry vision, pain, and fatigue at work. She then engaged an engineering firm to "evaluate the ergonomic and environmental aspects" of her workplace.

Shortly after Doe engaged the engineering firm, SCU's "management behavior" changed. Before the change, Doe was well respected, and the environment at SCU was supportive and inclusive. Afterwards, management marginalized, micromanaged, and ostracized her. Among other things, the chair of Doe's department refused to write Doe a recommendation letter for tenure-track faculty positions, berated Doe at a faculty meeting, and excluded her from the faculty podium during graduation ceremonies.

### 2. May 2018

In May 2018, while walking on campus, Doe experienced a sharp pain. Later that day, she extracted small objects from her "intimate parts," which she submitted for lab evaluation. Upon information and belief, Doe asserts the objects in her intimate parts constituted sexual assault and battery. Based on this experience and her sickness at work,

Doe began to prepare a complaint for the California Office of Safety and Health Administration (Cal-OSHA).

### 3. June 2018

Although there is no allegation that Doe had submitted a complaint to Cal-OSHA, she alleges that SCU became aware of the concerns she planned to raise and SCU retaliated against her for them. On or about June 13, 2018, the chair of Doe's department revoked funding for Doe's end-of-year Asian-American oral history film festival. In addition, Doe's summer 2018 course was cancelled, and she was not invited to teach at SCU again.

SCU also failed to investigate Doe's complaints. On June 14, 2018, Doe wrote to her department chair and to SCU's director of environment, health and safety asking the university for "assistance with conducting an inquiry." She also advised the director that she was submitting her "inquiry regarding workplace environment/safety matters" to Cal-OSHA. Several days later, the director told Doe that SCU would respond to any inquiry received from Cal-OSHA concerning Doe's complaint.

### 4. December 2018

In early December 2018, Doe asked the director of environment, health and safety for an update on the investigation into her claims. The director told Doe that Cal-OSHA had informed SCU that no follow-up was required by SCU, and he encouraged Doe to reach out to Cal-OSHA with any questions. Cal-OSHA replied that Doe's complaint was beyond Cal-OSHA's "regulatory confines," but that Cal-OSHA had not instructed SCU on taking further action.

On or about December 10, 2018, Doe filed an online report with SCU regarding her May 2018 sexual assault and battery. Two days later, Doe found "another suspect specimen that had penetrated her intimate parts." Doe had this specimen evaluated by experts, who identified it as a "device with semiconductor components." (Doe also discovered similar technology in her body in July 2019 and August 2020.)

3

### 5. *Winter 2019*

In January 2019, Doe met with SCU's equal employment and Title IX officer and informed the officer that she believed the specimen discovered in December 2018 constituted sexual assault and battery. The officer responded that she was aware of Doe's prior complaint to Cal-OSHA and that SCU did not work on micro technology. On or about February 14, 2019, the officer notified Doe that SCU would not proceed with an investigation.

## C. Administrative Proceedings

On or around October 8, 2021, Doe filed a complaint with the California Department of Fair Employment & Housing (the Department),[1] alleging sexual assault, harassment based on gender and race, and failure to investigate.[2]

On November 5, 2021, a letter from the Department notified Doe that her case would be closed because her administrative complaint was "[o]utside of jurisdictional time frame." The letter invited Doe to provide more information if she disagreed with the Department's determination. Doe does not appear to have done so, and on December 24, 2021, the Department notified Doe that it had closed her case and issued a "Right to Sue" notice.

In January 2022 Doe also presented a discrimination charge to the Equal Employment Opportunity Commission (EEOC), attaching a copy of her administrative complaint to the Department. Later that month, the EEOC dismissed the charge and issued Doe a notice of right to sue.

---

[1] In July 2022, the Department was renamed the Civil Rights Department. (<https://calcivilrights.ca.gov> [as of Sept. 25, 2024], archived at: <http://perma.cc/HR89-FXFA>.)

[2] Although Doe asserts on appeal that her administrative complaint was submitted on May 27, 2021, she does not cite any evidence supporting this assertion. The May 27, 2021 date appears to be based on submission of an intake form, which did not assert any claims.

## D. Proceedings Below

In April 2022, Doe filed complaints in two separate actions[3] against SCU, both asserting similar claims of discrimination, harassment, retaliation, hostile work environment, and negligence. Doe filed a motion to consolidate the two actions, which the trial court granted.

While the motion to consolidate was pending, Doe filed an amended complaint in the earlier of the actions. The amended complaint asserted seven claims under the Fair Employment & Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and Title VII of the Civil Rights Act of 1964: failure to prevent harassment, discrimination, or retaliation; gender discrimination; sex discrimination; race discrimination; harassment; hostile work environment; and retaliation. The amended complaint also asserted three Labor Code claims, for violating sections 98.6, 1102.5, and 6310, respectively. Finally, the amended complaint asserted a claim for breach of contract.

SCU demurred, arguing that Doe failed to timely file her administrative complaint with the Department on her FEHA and Title VII claims, that her Labor Code claims were time barred, and that she had failed to state valid claims. The trial court sustained the demurrer without leave to amend.[4]

The trial court held that Doe's FEHA and Title VII claims were time-barred because Doe did not file an administrative complaint with the Department until more than a year after her last day of employment. Doe, the court reasoned, was required to exhaust her administrative remedies with the Department, but prior to January 1, 2020, FEHA required that administrative complaints be filed with a year of the alleged unlawful

---

[3] Santa Clara Superior Court case Nos. 22CV397478 and 22CV398192.

[4] Doe moved to augment the record on appeal to include the reporter's transcript of the December 8, 2022 demurrer hearing. Because the reporter's transcript was already included in the record filed in this matter, Doe's motion is denied.

employment practices. In addition, the trial court rejected Doe's arguments concerning the continuing violation and equitable tolling doctrines and Emergency Rule 9.

The trial court also dismissed Doe's Labor Code and contract claims. The court held that Doe's Labor Code claims were barred because the statute of limitations for those claims is three years and Doe did not file suit until April 2022, more than three years after her employment terminated in June 2018. The court further held that Doe had failed to state a valid claim for breach of contract because her appointment letter did not contain the term that SCU allegedly breached.

Finally, the trial court denied Doe leave to amend. It reasoned that Doe could not cure the defects in her FEHA claims in light of her admission that she did not file her administrative complaint until more than two years after SCU's equal employment and Title IX officer informed her in February 2019 that SCU would not proceed with an investigation of Doe's claims. The trial court also found that Doe had failed to show how she could cure the defects in her Labor Code and contract claims.

The trial court entered judgment on January 21, 2023, and on February 6, 2023. Doe filed a timely notice of appeal.

## II. DISCUSSION

Doe argues on appeal that her causes of action were timely and stated valid claims. In the alternative, she argues that the trial court should have granted her leave to amend her claims. We review the dismissal of Doe's claims de novo (see, e.g., *Aviles-Rodriguez v. Los Angeles Community College District* (2017) 14 Cal.App.5th 981, 987 (*Aviles-Rodriguez*)) and the denial of leave to amend for abuse of discretion (see, e.g., *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Kirwan*)). We conclude that for the most part Doe's claims are time-barred and that, to the extent they are not, they fail to state valid claims. As Doe has failed to explain how an amendment would cure these defects, we also conclude that the trial court did not abuse its discretion in denying leave to amend.

6

### A. The Labor Code Claims

We begin with Doe's Labor Code claims. Doe alleged that SCU violated Labor Code sections 98.6, 1102.5, and 6310 by retaliating against her for investigating unsafe work conditions and reporting those conditions and sexual assaults to government and university officials. We conclude that these claims are time barred because Doe did not file her complaints raising them until April 2022, more than three years after the claims accrued.

#### 1. *The Limitations Period*

The Labor Code does not specify a limitations period for claims alleging violations of sections 98.6, 1102.5, and 6310. As a consequence, we look to the general statutes of limitations in the Code of Civil Procedure for the limitations periods governing these claims. Section 340 of the Code of Civil Procedure imposes a one-year limitations period for "action[s] upon a statute for a penalty or forfeiture" (Code Civ. Proc., § 340), and section 338 imposes a three-year period for "action[s] upon a liability created by a statute, other than a penalty or forfeiture" (*id*., § 338, subd. (a)). Doe seeks damages rather than penalties or forfeitures. Consequently, as Doe acknowledges, the three-year limitations period in Code of Civil Procedure section 338 governs her Labor Code claims. (*Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 404 [applying Code of Civil Procedure section 338 to Labor Code claim seeking damages]; see also *Ayala v. Frito Lay, Inc.* (E.D. Cal. 2017) 263 F.Supp.3d 891, 915-916 [applying Code of Civil Procedure section 338 to damages claims under Labor Code sections 98.6 and 1102.5]; *Minor v. FedEx Office & Print Services* (N.D. Cal. 2016) 182 F.Supp.3d 966, 988 [applying Code of Civil Procedure section 338 to damages claims under Labor Code section 1102.5].)

#### 2. *Timeliness*

Doe did not timely file her Labor Code claims. Doe filed her civil complaint asserting the claims on April 16, 2022. However, the claims accrued, and the statute of

limitations began to run, no later than June 15, 2018, when Doe's employment with SCU terminated. As a consequence, Doe did not file her claims until more than three years and 10 months after they accrued, after the three-year limitations period had expired.

A claim accrues "when the party alleging injury is entitled to ' " 'begin and prosecute an action thereon' " ' " (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 931 (*Pollock*)), which normally occurs when the claim " ' "is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' " (*City of Pasadena v. Superior Court* (2017) 12 Cal.App.5th 1340, 1348.) Claims under Labor Code sections 98.6, 1102.5, and 6310 require proof that the plaintiff "was subjected to adverse employment action after engaging in protected activity and that there was a causal connection between the two." (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1546 (*Hansen*) [Labor Code, § 1102.5]; see *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 304 [Labor Code sections 1102.5, 6310, and 98.6].) As a consequence, Doe's Labor Code claims accrued when SCU took "adverse employment action" against Doe in retaliation for engaging in protected activity.

Doe alleges that SCU took adverse employment actions retaliating against her in the winter, spring, and early summer of 2018. In particular, Doe alleges that after she engaged an engineering firm to investigate environmental conditions—which she contends is a protected activity—in February 2018, SCU's treatment of her "changed dramatically" and she was "marginalized." Among other things, Doe alleges that her department chair refused to provide a letter of recommendation, berated her in a faculty meeting, and excluded her from the podium during graduation. Doe also alleges that in the late spring and early summer of 2018, after she began putting together a Cal-OSHA complaint and requested assistance in investigating workplace environment and safety matters, her department chair eliminated funding for her Asian-American film festival, her summer class was canceled, and she was not invited to teach at SCU after her

8

appointment expired on June 15, 2018. Thus, the alleged adverse employment actions retaliating against Doe's protect activities all occurred by June 15, 2018, and therefore her Labor Code claims accrued by that point.

Doe does allege some conduct after June 2018. For example, she alleges that in December 2018 she contacted an SCU official to inquire about the investigation into the workplace safety concerns she had raised and that she filed an online report about the May 2018 sexual assault and battery. In addition, Doe alleges that in February 2019 an SCU official informed her that the university would not conduct an investigation into the reported assault. However, no retaliation claim arose at these points because, as noted above, retaliation claims are based on "adverse employment action[s]" (*Hansen*, *supra*, 171 Cal.App.4th at p. 1546), and therefore "a prerequisite" to a Labor Code retaliation claim is "the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred." (*Soukup v. Law Office of Herbert Hafif* (2006) 39 Cal.4th 260, 288 (*Soukup*).) Doe's employment relationship with SCU ended on June 15, 2018 when her last appointment expired. Consequently, SCU could not have taken any adverse employment actions, and no retaliation claim accrued, after that point. (*Soukup*, *supra*, 39 Cal.4th at p. 288; *Hansen*, *supra*, 171 Cal.App.4th at p. 1546.)

We therefore conclude that Doe's Labor Code claims accrued, and the statute of limitations upon those claims began to run, by June 15, 2018, that the three-year statute of limitations under Code of Civil Procedure section 338 expired on June 15, 2021, and therefore the complaint filed by Doe on April 16, 2022 was 10 months late.

### 2. *The Continuing Violation Doctrine*

Doe argues that her Labor Code claims were timely because the continuing violation doctrine delayed their accrual. We disagree for two reasons.

First, the continuing violation doctrine does not apply to Doe's Labor Code claims to the extent the claims are based on discrete actions. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating

9

the limitations period as accruing for all of them upon commission or sufferance of the last of them." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 (*Aryeh*).)  It applies to claims for matters such as harassment or failure to accommodate a disability based on a course of conduct where it may be unclear exactly when the conduct rose to the level of a violation, and where the employee may have some hope of informal resolution (which immediate accrual might hinder).  (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 820-822 (*Richards*).)  The doctrine does not apply to discrete, independently actionable wrongs.  (*Aryeh*, *supra*, 55 Cal.4th at p. 1198; see also *National Railroad Passenger Corp. v. Morgan* (2002) 536 U.S. 101, 113 ["[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."].)  As a consequence, the continuing violation doctrine does not apply to Doe's allegations that SCU eliminated her film festival funding, canceled her summer 2018 course, or failed to invite her to teach after her last appointment expired in June 2018.

Second, while Doe makes other allegations involving a course of conduct rather than discrete acts, the requirements for applying the doctrine to those actions are not satisfied here.  To invoke the continuing violation doctrine, a plaintiff must satisfy three requirements:  (1) There was unlawful employer action within the limitations period similar in kind to the unlawful employer conduct outside the period; (2) the misconduct was reasonably frequent; and (3) the misconduct had not acquired a degree of permanence.  (*Richards*, *supra*, 26 Cal.4th at p. 823; see also *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 1004-1005 [applying *Richards* test to sexual harassment and retaliation context].)  Doe's Labor Code claims fail the first requirement.  Doe contends that SCU retaliated against her by creating an intolerable work environment in which she was marginalized and ostracized.  While an unlawful hostile environment may constitute a continuing violation, Doe does not allege that she was marginalized or ostracized during the limitations period in a manner similar to the

10

alleged actions of her department chair in the spring of 2018. As a consequence, there was no unlawful conduct similar in kind within the limitations period. Indeed, no retaliatory course of conduct could have continued beyond June 15, 2018, when Doe's appointment at SCU terminated, because an adverse employment action and the existence of an employer-employee relationship are prerequisites to any retaliation claim. (*Soukup*, *supra*, 39 Cal.4th at p. 288.)

### 3. *Equitable Tolling*

Doe also argues that her Labor Code claims were timely because the equitable tolling doctrine suspended, or "tolled," the running of the statute of limitations. This argument is also unpersuasive.

The equitable tolling doctrine is " 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).) It applies " ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one" ' " because in that situation the defendant's interest in receiving notice of the claims against it is "satisfied by the filing of the first proceeding that gives rise to tolling." (*Id.* at p. 100.)

Doe asserts that she "put Defendant Santa Clara University on notice in June 14, 2018 . . . when she made a simultaneous internal complaint seeking administrative remedy regarding workplace safety and a May 2018 sexual assault/battery on campus" and again in December 2018 when she filed a complaint concerning sexual assault. The allegations actually in the first amended complaint are more modest. It alleges only that on June 14, 2018 Doe "request[ed] assistance with conducting an inquiry," which appears to have been "regarding workplace environment/safety matters," and that in December 2018 she filed a "report online," not a complaint, concerning sexual

11

assault. As a consequence, it is not clear that Doe sought a legal remedy from SCU in either June 2018 or December 2018.

Even more important, there is no allegation that Doe submitted a retaliation claim, much less provided notice of the Labor Code claims in her first amended complaint. Nothing in the allegations concerning either the June 2018 request for assistance or the December 2018 report suggests that SCU took any adverse employment action against Doe in retaliation for engaging in protected activity. Indeed, the allegations concerning the June 2018 request or the December 2018 do not mention protected activities, adverse employment actions, or retaliation. As a consequence, the allegations fail to provide any notice of Doe's claims for retaliation under the Labor Code and therefore do not equitably toll those claims.

### 4. *Emergency Rule 9*

Doe also argues that Emergency Rule 9 tolled the statute of limitations. This argument does not help Doe because tolling under the rule would not save Doe's Labor Code claims. In response to the COVID-19 pandemic, the Judicial Council adopted Emergency Rule 9, which tolled statutes of limitations exceeding 180 days "from April 6, 2020, until October 1, 2020," that is, for approximately six months. (See *People v. Financial Casualty & Surety, Inc.* (2021) 73 Cal.App.5th 33, 39; Cal. Rules of Court, App. 1, emergency rule 9(a) (amended effective May 29, 2020).) As shown above, Doe's Labor Code claims were asserted ten months late. Consequently, even with tolling under Emergency Rule 9, the statute of limitations bars Doe's Labor Code claims.

## B. FEHA Claims

In her amended complaint Doe asserted seven FEHA claims.[5] The trial court dismissed these claims for failure to exhaust administrative remedies because Doe did not

---

[5] Four claims in the amended complaint were brought under both FEHA and Title VII of the Civil Rights Act. However, in her opening brief, Doe made no mention of Title VII, much less asserted any substantive difference between Title VII and FEHA. As

timely file them with the Department.  We agree that most of Doe's FEHA claims are barred for failure to present a timely administrative complaint to the Department and conclude that, to the extent that they are not, Doe has failed to state a valid claim.

### 1. *FEHA's Exhaustion and Timeliness Requirements*

Plaintiffs claiming FEHA violations must exhaust their administrative remedies by filing a complaint with the Department and obtaining a notice of right to sue.  (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 83; *Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1412-1413.)  Failure to exhaust administrative remedies is a jurisdictional rather than a procedural defect (see, e.g., *Martin v. Lockheed Missiles & Space Co., Inc.* (1994) 29 Cal.App.4th 1718, 1724), and timely filing of an administrative complaint is a prerequisite for exhausting administrative remedies.  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.)  Consequently, if a plaintiff fails to file a timely administrative complaint raising a FEHA claim, any civil action based on that claim must be dismissed.  (*Wassmann v. South Orange County Community College District* (2018) 24 Cal.App.5th 825, 850 (*Wassmann*).)  Where an administrative complaint is untimely on its face, the party asserting the claim bears the burden of showing that some tolling rule or other exception makes it timely.  (*Holland v. Union Pacific Railroad Co.* (2007) 154 Cal.App.4th 940, 945.)

Before January 1, 2020, FEHA provided that administrative complaints with the Department shall not be filed "after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." (Gov. Code, § 12960, former subd. (d).)  Effective January 1, 2020, the Legislature amended FEHA to enlarge the period for filing administrative complaints to three years.  (Gov. Code, § 12960,

---

a consequence, SCU had no opportunity to respond to any argument concerning Title VII in particular, and Doe has forfeited any argument that Title VII requires different treatment than FEHA.  (See, e.g., *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554-555 (*Golden Door*).)

subd. (e); 2019 Stats., ch. 709, § 1; *Pollock, supra*, 11 Cal.5th at p. 931.) However, this amendment applies only to claims that had not lapsed by January 1, 2020. (Gov. Code, § 12960, subd. (f)(3); see also 2019 Stats., ch. 79, § 3 ["This act shall not be interpreted to revive lapsed claims."].)

### 2. *The Discrimination Claims*

Doe asserts claims for race, sex, and gender discrimination. Doe filed an administrative complaint with the Department raising such claims on October 8, 2021. By that time, the deadline for filing had long passed, and the claims had lapsed.

Doe alleges that SCU failed to provide her the environment free from discrimination provided to men and those who do not share her race by denying her fair and accurate evaluations, a work environment free of intimidation and harassment, and the same opportunities as similarly situated men and others similarly situated. It is not clear exactly what events these allegations reference. However, as FEHA prohibits discrimination in selection, hiring, the terms, conditions, or privileges of employment, and discharge (Gov. Code, § 12940, subd. (a)(1)), this discrimination must have taken place before her employment terminated. (*Aviles-Rodriguez, supra*, 14 Cal.App.5th at pp. 987-991; *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 977.) As a consequence, Doe's discrimination claims accrued no later than June 15, 2018, when her appointment expired. Therefore, under the then-applicable one-year period, she had to file those claims with the Department no later than June 2019—more than two years before her October 2021 administrative complaint. (*Pollock, supra*, 11 Cal.5th at p. 931.)

Here again, Doe invokes the continuing violation doctrine, equitable tolling, and Emergency Rule 9. None of these apply. The continuing violation doctrine does not apply because, even assuming that Doe's discrimination claims are based upon a course of conduct rather than discrete, independently actionable claims, there was no adverse employment action after the expiration of her appointment in June 2018. As that is well

14

outside the limitations period, the first requirement for applying the continuing violation doctrine—similar misconduct within the limitations period—is absent. (*Richards*, *supra*, 26 Cal.4th at p. 823.) Doe alleges that in July 2019 and August 2020 she discovered "additional technology of the same type" as previously found. However, there is no allegation that the technology is connected to any adverse employment action covered by FEHA. As a consequence, the alleged July 2019 and August 2020 discoveries do not show the "unlawful employer conduct" needed to trigger the continuing violation doctrine. (*Richards*, *supra*, 26 Cal.4th at p. 823.)

The equitable tolling doctrine does not apply either. Neither Doe's June 2018 request for assistance nor her December 2018 report asserted any unlawful discrimination. The June 2018 request concerned "workplace environment/safety matters," which failed to provide notice of any race, sex, or gender discrimination by SCU. (*McDonald*, *supra*, 45 Cal.4th at p. 99.) Similarly, the December 2018 report concerned "sexual assault and sexual battery" by unspecified persons and therefore likewise failed to provide notice of any discrimination by SCU.

Finally, Emergency Rule 9 does not help Doe because the time for filing an administrative complaint concerning her discrimination claims expired in June 2019, long before April 2020, when the rule began tolling statutes of limitations.

### 3. *The Harassment and Hostile Work Environment Claims*

In addition to asserting claims for race, sex, and gender discrimination, Doe asserts claims for harassment and hostile work environment. Her October 2021 administrative complaint was also untimely as to these claims. Doe's harassment and hostile work environment claims appear to be based on the marginalization and ostracism that Doe allegedly suffered in the winter and spring of 2018. Moreover, any harassment or hostile work environment suffered by Doe necessarily ended when her employment terminated in June 2018. (*Richards*, *supra*, 26 Cal.4th at p. 823 [statute of limitations for harassment claims begins to run "when the course of conduct is brought to an end, as

15

by . . . the employee's resignation"].)  Consequently, Doe's harassment and hostile work environment claims accrued no later than June 2018, and the deadline for filing those claims expired in June 2019.  (*Pollock*, *supra*, 11 Cal.5th at p. 931.)  Doe's October 2021 administrative complaint asserting harassment was therefore untimely.  (*Wassmann*, *supra*, 24 Cal.App.5th at p. 850.)

Nor are these claims saved by the continuing violation doctrine, the equitable tolling doctrine, or Emergency Rule 9.  Although the continuing violation doctrine applies to harassment and hostile work environment claims, it does not help Doe because, as just noted, any harassment or hostile work environment necessarily ended by June 15, 2018 and therefore Doe cannot show the unlawful employer conduct within the limitations period needed to trigger the doctrine.  (*Richards*, *supra*, 26 Cal.4th at p. 823.)  The equitable tolling doctrine does not apply either.  Doe's June 2018 inquiry concerned "workplace environment/safety matters" and her December 2018 report concerned sexual assault rather than harassment and hostile work environment claims and therefore failed to provide any notice of those claims.  (*McDonald*, *supra*, 45 Cal.4th at p. 99.)  Finally, Emergency Rule 9 does not apply because the time for filing an administrative complaint concerning her harassment and hostile work environment claims expired in June 2019, before the rule began tolling the statute of limitations.

### 4.  *The Retaliation Claim*

Doe also asserts a FEHA retaliation claim that, much like her Labor Code claims, alleges SCU "subjected [her] to adverse employment action and other adverse treatment" in retaliation for her complaints about workplace safety, harassment, discrimination, and other (unspecified) wrongful conduct.  Doe's retaliation claim was untimely as well.

To establish retaliation under FEHA, a plaintiff must show, among other things, that "the employer subjected the employee to an adverse employment action."  (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1042.)  In some unusual circumstances, such as where an employer provides a negative job reference, a retaliation claim may

16

arise out of conduct after termination of employment. (See, e.g., *Robinson v. Shell Oil Co.* (1997) 519 U.S. 337, 345-346; *Sada v. Robert F. Kennedy Med. Ctr.* (1997) 56 Cal.App.4th 138, 162.) Doe has not alleged any negative job reference or other adverse employment action after her termination. As a consequence, any adverse employment action taken by SCU in retaliation for protected conduct occurred when Doe was employed by SCU and thus before her employment terminated on June 15, 2018. (*Soukup*, *supra*, 39 Cal.4th at p. 288.) Consequently, Doe's FEHA retaliation claim accrued, and the statute of limitations began to run, no later than June 15, 2018, which means that once again the deadline for filing an administrative complaint raising her claims expired in June 2019 (*Pollock*, *supra*, 11 Cal.5th at p. 931), and her October 2021 administrative complaint was untimely.

In addition, the continuing violation doctrine, the equitable tolling doctrine, and Emergency Rule 9 do not apply to Doe's retaliation claim for the same reasons that they do not apply to her discrimination, harassment, or hostile work environment claims.

### 5. *Failure to Prevent*

Doe also brings a claim under FEHA for the failure to prevent, investigate, and remedy discrimination, harassment, retaliation and "other wrongful conduct." Unlike Doe's other FEHA claims, this claim may not be entirely time-barred. Nevertheless, the failure-to-prevent claim fails because Doe has not stated a valid claim based on conduct after her termination.

To the extent that Doe's failure-to-prevent claim is based on SCU's failure to prevent discrimination, harassment, or retaliation that occurred before Doe's termination, her administrative complaint was untimely because the claim arose no later than June 2018, the deadline for filing an administrative complaint was June 2019, and her 2021 complaint was not filed until well past that deadline.

However, to the extent that Doe contends that SCU failed to investigate and remedy wrongful conduct after January 1, 2019, her claim was timely. Doe alleges that

17

SCU declined to proceed with investigation of her December 2018 online report of sexual battery and assault by February 14, 2019. A claim based on that failure would not have accrued until February 2019 and, under the then-applicable limitations period, the deadline for filing an administrative complaint would originally have been February 2020. However, the amendment enlarging the limitations period to three years became effective in January 2020, thereby extending the deadline to file an administrative complaint for her failure-to-prevent claim to February 2022. (Gov. Code, § 12960, subd. (f)(2), (3) [applying three-year period retroactively to claims not already lapsed].) Consequently, to the extent that her failure-to-prevent claim is based on conduct after January 1, 2019, Doe's October 2021 administrative complaint was timely with respect to that claim.

Nonetheless, we affirm the dismissal of the failure-to-prevent claim for another reason: To the extent that the claim is based on conduct after January 1, 2019, it fails to state a valid claim. (See *Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1192-1193 ["[I]t is a settled appellate principle that if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning."].) FEHA does not impose a duty on employers to prevent all injury to employees or even to prevent all misconduct against employees. Instead, FEHA requires employers "to take all reasonable steps necessary to prevent discrimination and harassment from occurring" (Gov. Code, § 12940, subd. (k)), and it makes harassment of an employee by another employee unlawful if the employer "knows or should have known of this conduct and fails to take immediate and appropriate corrective action" (*id*., § 12940, sub. (j)(1)). However, the complaint does not allege that the sexual assault and battery suffered by Doe was the result of workplace discrimination or harassment. In addition, Doe does not allege that SCU knew or should have known that an employee was sexually assaulting Doe by placing foreign objects on her body. The complaint alleges only that SCU "knew or should have known of the conduct," which is too vague and conclusory to state a valid

18

claim. (See, e.g., *Wozniak v. YouTube, LLC* (2024) 100 Cal.App.5th 893, 925 ["It is well settled that ' " 'conclusory allegations will not withstand demurrer.' " ' "].) As a consequence, Doe has failed to state a valid claim for failure to prevent under FEHA based on conduct after January 1, 2019.

We therefore conclude that Doe's FEHA claims fail either because they are time-barred or because Doe has not stated a valid claim.

## D. Breach of Contract

Doe's final claim is for breach of her employment contract with SCU. The trial court ruled that Doe failed to allege breach of any term of her contract with SCU. We affirm this ruling. Doe has waived any appeal from this ruling by failing to brief this issue on appeal, and, in any event, the claim fails as a matter of law.

On appeal, Doe makes virtually no argument in support of her contract claim. Her opening brief contains no discussion of the issue, and the only thing that her reply brief says about the contract claim is that "[e]mployers have a responsibility to keep their employees safe in any employment contract, and violations breach the Implied Covenant to Perform Work in a Good and Competent Manner." Doe does not support this assertion with either references to the record or any supporting legal theory or argument. Even where, as here, we are conducting a de novo review of issues of law, it remains the appellant's duty to demonstrate the trial court's error. (*Thomas v. Shewry* (2009) 170 Cal.App.4th 1480, 1485.) Accordingly, we conclude that Doe has waived any appeal from the dismissal of her contract claim. (*Golden Door*, *supra*, 50 Cal.App.5th at pp. 554-555 [issues not adequately raised in appellant's brief are deemed waived or abandoned, even on de novo review]; *W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 153 [argument unsupported by legal analysis and citation waived]; see also *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125–1126 [litigants proceeding in propria persona are subject to same rules of procedure as attorneys].)

19

Even had Doe not waived the appeal concerning her contract claim, we would affirm the dismissal of the claim. A written contract is formed "when there is a writing containing all terms and acceptance by the party to be charged." (*Mitchell v. American Fair Credit Assn.* (2002) 99 Cal.App.4th 1345, 1351; see also *Pietrobon v. Libarle* (2006) 137 Cal.App.4th 992, 997 [a writing must contain all the terms of the alleged agreement and that the party to be charged must have accepted those terms].) Moreover, where breach of a written contract is asserted, the contract generally "must contain the items of the agreement and the obligations sued upon." (*Bank of America v. Security Pacific Nat. Bank* (1972) 23 Cal.App.3d 638, 645; see also *JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 686 ["a claim is founded upon a writing only when it 'relies upon the language within a written instrument or contract' " (italics omitted)].)

Doe alleges that, under SCU's contract with her, SCU was "bound to adhere strictly to respect for persons, honoring Plaintiff's dignity, autonomy (and individual rights) and humanity," and she attaches the contract, her appointment letter, to the amended complaint. The letter set forth Doe's appointment (as an Adjunct Lecturer), the period of the appointment, the courses to be taught and her responsibilities for those courses, her compensation, and some training requirements. It also stated that Doe's appointment was "subject to the applicable terms and conditions set forth in the *Faculty Handbook* as amended from time to time, the protocols of the College of Arts and Sciences, and such special rules and regulations as may be promulgated" and that the appointment letter "can be altered or extended only by further written agreement signed by you *and the Dean*." (Italics added). However, nothing in the letter imposed on SCU the duty that Doe asserts to adhere strictly to respect for persons, honoring Doe's dignity, autonomy, individual rights, and humanity.

There is a handwritten notation at the end of the letter, but there is no indication that the Dean or any other SCU official agreed to this notation. Even more important, the notation does not purport to impose any duty upon SCU. It merely states that "I am

20

happy to be a part of SCU, which I understand to be a community of reflection and strict adherence to respect for persons." This sentiment appears to have been expressed by Doe, and while it may reflect Doe's understanding and expectation, it does not impose any enforceable duty upon SCU.

Accordingly, we conclude that Doe has failed to state a valid contract claim.

## E. Leave to Amend

In addition to arguing that the trial court erred in dismissing her claims, Doe argues that the trial court abused its discretion in denying her leave to amend. When a trial court sustains a demurrer without leave to amend, we review the denial of leave for abuse of discretion and "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Kirwan*, *supra*, 39 Cal.3d at p. 318.) Moreover, as the Supreme Court repeatedly has stressed, "[t]he burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*; see also *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 ["Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."].) Doe has not satisfied this burden.

Doe has not shown a reasonable possibility that any amendments would cure the substantive defects identified above. For example, Doe does not—and, as far as we can tell, cannot—argue that any amendment could cure the defects in her contract claim. Nor does she argue that any amendment would allow her to state a valid claim under the Labor Code or FEHA based on conduct after her employment at SCU terminated in June 2018. Finally, she has not argued that she could amend her complaint to allege that the asserted sexual assault and battery involved any adverse employment action covered by FEHA.

Instead, Doe asserts that she could amend her complaint to show that her Labor Code and FEHA claims were equitably tolled and, thus, timely filed. In particular, Doe

asserts that, if she had been given the opportunity, she would have amended her complaint to allege that she "provid[ed] the same expert reports and substantial[] complaints about sexual assault and battery and workplace safety in June of 2018 and December 2018 internally to SCU" as she later did to the Department and the EEOC. Such amendments would not save the claims in this case. As we concluded above, Doe's complaints about workplace safety and the alleged assault and battery do not involve any adverse employment actions taken by SCU and thus do not provide notice of any valid FEHA or the Labor Code claims. Consequently, the amendments proposed by Doe would not show that any of her complaints provided the notice needed to trigger equitable tolling of her FEHA and Labor Code claims. We also have examined the December 8, 2022 hearing on SCU's demurrer and see nothing there suggesting that an amendment would cure the defects in Doe's claims. We therefore conclude that Doe has not shown a reasonable probability that an amendment would cure the defects in her complaint.

In reaching this conclusion, we are mindful of the grievous injury Doe has alleged and her conviction that SCU failed to protect her and to investigate the cause of this injury, as she believes that it should have. However, the statutes that Doe has invoked are designed to deal with adverse employment actions, and they are subject to limitations periods which Doe has not satisfied. We therefore conclude that the trial court properly sustained SCU's demurrer and did not abuse its discretion in denying her leave to amend.

### III. DISPOSITION

The judgment is affirmed. As SCU has not argued that Doe's claims were frivolous when brought or while she continued to litigate them, we conclude that the parties shall bear their own costs on appeal. (*Pollock*, *supra*, 11 Cal.5th at pp. 950-951.)

22

_____

BROMBERG, J.

WE CONCUR:

_____

GROVER, ACTING P. J.

_____

LIE, J.

*Doe v. Santa Clara University*
H050798