Filed 12/23/25  Jordan v. County of Los Angeles CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN JORDAN, | B333041 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV35914) |
| v. | |
| COUNTY OF LOS ANGELES, Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie Bowick, Judge.  Affirmed.

Haney & Shah, Steven H. Haney and Elizabeth L. Musser for Plaintiff and Appellant.

Miller Barondess, Mira Hashmall, Jason H. Tokoro, and Eleanor S. Ruth for Defendant and Respondent.

———————————

Brian Jordan appeals from the judgment entered after the trial court sustained the County of Los Angeles's (County) demurrer to his second amended complaint, without leave to amend.  Jordan was formerly a captain in the Los Angeles County Fire Department (LACFD).  Jordan responded to the scene of the helicopter crash that killed NBA star Kobe Bryant and others.  In the course of his duties, Jordan took photographs at the scene.  He alleged that he was later told to lie about taking those photos.  He further alleged that when he refused to lie, the County retaliated against him by failing to pay for his legal representation in an action brought by the crash victims' families, and by denying him a retirement badge.

The operative complaint asserted causes of action for violation of Labor Code section 1102.5, subdivision (b), and retaliation in violation of the United States and California Constitutions.  The trial court sustained the demurrer to these causes of action on several grounds, including that the Labor Code cause of action was time-barred and Jordan's constitutional retaliation cause of action failed to adequately plead a custom or policy of retaliation sufficient to subject the County to liability under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 691 (*Monell*).  We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Jordan was a captain in the LACFD.  On January 26, 2020, a helicopter crashed in the foothills of the Santa Monica

---

[1]     Consistent with the standard of review, we assume the truth of the properly pleaded allegations stated in Jordan's complaint.  (*National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 432–433.)

mountains, killing Kobe Bryant, his daughter, and Christopher Chester's wife and daughter, among others. A superior officer, Anthony Marrone, ordered Jordan, in the scope of Jordan's work as a safety officer for the LACFD, to photograph the crash site. Jordan did so. An unnamed superior officer later told Jordan to delete all photos he had taken, and he complied. According to the complaint, at an unspecified later date, "defendants" told Jordan to claim he had not taken any pictures. He refused to do so.

In June 2020, Jordan was placed on injury leave. In October 2020, Jordan's doctor informed him he could not return to work due to a disability.

In September and November 2020, respectively, Vanessa Bryant and Christopher Chester filed lawsuits against the County of Los Angeles and others. The lawsuits concerned photos taken at the crash site that were later disseminated.

On December 2, 2020, Jordan applied for disability retirement. On December 3, he received a Notice of Intent to Terminate (Notice) from the LACFD. The Notice was based on the claim that Jordan had taken and disseminated photos of the crash site without authorization. On December 7, Jordan retained counsel to represent him with respect to the Notice.

Jordan retired effective January 2021. He began requesting a retirement badge pursuant to Los Angeles County Code section 5.64.250(A).[2] The County did not respond to the

---

[2] Los Angeles County Code section 5.64.250(A) provides that "any person who has been a duly and regularly appointed, commissioned, or elected official, officer or employee and who, prior to the effective date of the ordinance codified herein was honorably retired from such position, may carry such badge lawfully issued to him incident to his retirement if the word

requests.  In April 2021, the LACFD denied Jordan's request for disability retirement.

In May 2021, Christopher Chester named Jordan as a defendant in his lawsuit concerning the crash photographs. Jordan retained an attorney to represent him in the matter.  The County, through Deputy Fire Chief William McCloud, offered to pay for Jordan's legal defense, but only if he was willing to change lawyers and testify that he did not take any pictures at the crash site.  Jordan rejected the County's offer through his attorney.  In June 2021, at the County's request, Jordan signed an acknowledgment stating: "I . . . confirm that I am voluntarily declining the County of Los Angeles' offer of County-paid legal representation . . . .  I have retained my own attorney to represent me.  I further understand that the County will not pay my representative's fees and costs and that I am personally responsible for all legal fees and costs in connection with this matter."[3]  The County did not pay for Jordan's representation.

In August 2021, Jordan was dismissed as a defendant from the Chester action.  Jordan was deposed in the Bryant action in November 2021.  In August 2022, he testified at the consolidated trial in the Bryant and Chester actions.

On November 9, 2022, Jordan filed a claim against the County in accordance with Government Code section 910 et seq. He asserted that the County had failed to provide him with a

_____

'Retired' is plainly shown on such badge by being engraved, embossed, or otherwise permanently affixed thereto."

[3]    The trial court granted the County's request for judicial notice of its offer of representation to Jordan and his response, among other documents.  Jordan does not challenge this ruling on appeal.

4

defense pursuant to Government Code section 995, and that he was entitled to recover reasonable attorney fees, costs, and expenses pursuant to Government Code section 996.4. The claim also cited Labor Code section 1102.5, subdivision (b), but did not specify how the County had retaliated against Jordan.

On November 10, 2022, Jordan filed this action against the County. Jordan asserted causes of action for violation of Labor Code section 2802, violation of the Government Claims Act, and violation of Labor Code section 1102.5. The first two causes of action alleged that the County wrongfully failed to pay Jordan's attorney fees and costs. The third cause of action alleged a violation of Labor Code section 1102.5, subdivision (b), but did not identify Jordan's protected activity or state how the County had retaliated against him.

In December 2022, following his multiple requests, the County notified Jordan by letter that it would not issue him a retirement badge.

Jordan subsequently filed a first amended complaint, which added a cause of action for retaliation in violation of the California and United States Constitutions.[4] The County demurred. The trial court sustained the demurrer, with leave to amend as to the Labor Code section 1102.5 and constitutional retaliation causes of action.

---

[4] Before filing his first amended complaint, Jordan filed an amended government claim. The amended claim asserted the denial of the retirement badge was an act of retaliation against Jordan because he had filed a lawsuit seeking reimbursement of his attorney fees.

5

In April 2023, Jordan filed the operative second amended complaint. With respect to the Labor Code cause of action, Jordan alleged that the County had retaliated against him by issuing the Notice and continued retaliating against him by refusing to reimburse him for his attorney fees and costs, and by denying him a retirement badge. Jordan's cause of action under the state and federal constitutions alleged he engaged in protected activity by filing a lawsuit seeking reimbursement of his attorney fees, and the County retaliated against him by denying him a retirement badge. The second amended complaint also sought declaratory relief in the form of an order requiring the County to provide Jordan with a retirement badge and to "remove from his personnel file any discipline due to his refusal to commit perjury."

The County filed a demurrer to the second amended complaint, which the trial court sustained without leave to amend. The trial court concluded that a prerequisite to asserting a Labor Code section 1102.5 violation is the existence of an employer-employee relationship at the time the retaliatory conduct occurred. Jordan's employment with the County ended when he retired. Accordingly, the Labor Code cause of action accrued as of the date of Jordan's retirement in January 2021. Because Jordan had not filed his Government Claims Act claims until November 2022 and January 2023, his claim of retaliation, including the claim based on the Notice, was time-barred.[5]

The trial court concluded that Jordan's constitutional retaliation claim failed because it did not involve a matter of

---

[5] The trial court had previously rejected Jordan's argument that the continuing violation doctrine rendered his Labor Code section 1102.5 claim timely.

6

public concern and Jordan failed to plead sufficient facts concerning any County policy of retaliation. The allegations of the second amended complaint were therefore insufficient to hold the County liable pursuant to the *Monell* doctrine. The court also sustained the demurrer to Jordan's purported cause of action for declaratory relief because it sought the same relief as the specific performance cause of action in the first amended complaint, as to which the court had previously sustained a demurrer. Jordan had not sought leave to add a new cause of action. The court also observed that declaratory relief is not a cause of action.

The court found there was no reasonable probability that amendment could overcome the complaint's deficiencies, including that the Labor Code claim was time-barred and that the case did not involve a matter of public concern. In October 2023, the court entered the judgment of dismissal. Jordan timely appealed.

## DISCUSSION

Jordan contends the trial court erred in sustaining the demurrer to his second amended complaint on several grounds: 1) the Labor Code section 1102.5 cause of action was not time-barred because the continuing violation doctrine applies to the claim; 2) the County should be equitably estopped from arguing that the Labor Code section 1102.5 cause of action is time-barred; 3) he adequately alleged a First Amendment retaliation claim involving a matter of public concern and municipal liability under *Monell*; and 4) the facts alleged in the second amended complaint support declaratory relief in the form of an order stating that he

is entitled to a retirement badge.  We reject these arguments and affirm.[6]

## I.  The Trial Court Properly Sustained the Demurrer To the Second Amended Complaint

### A.  Standard of Review

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citation.]  First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  Next, we treat the demurrer as admitting all material facts properly pleaded.  Then we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]" ' " (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 532.)  "[A] demurrer assumes the truth of the complaint's properly pleaded allegations, but not of mere contentions or assertions contradicted by judicially noticeable facts." (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20.)

"If a demurrer is sustained, we exercise our independent judgment on whether a cause of action has been stated as a matter of law, regardless of reasons stated by the trial court.  [Citation.]  We affirm if the trial court's decision was correct on

---

[6]  Jordan's opening brief contains no record citations.  Although this deficiency would permit us to deem his arguments waived (*Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1190–1191; Cal. Rules of Court, rule 8.204(a)(1)(C)), we exercise our discretion to address the merits of the appeal.  The issues raised are largely resolved by reference to the 10-page second amended complaint.

8

any theory." (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210–211.)

**B.      Jordan Fails to State a Claim for Retaliation Under Labor Code Section 1102.5**

Labor Code section 1102.5, subdivision (b), provides: "An employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency, [or] to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ."

"Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to 'encourag[e] workplace whistle-blowers to report unlawful acts without fearing retaliation.' [Citation.] ' " 'To establish a prima facie case of retaliation, a plaintiff must show that [he] engaged in protected activity, that [he] was thereafter subjected to adverse employment action by [his] employer, and there was a causal link between the two.' " ' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287–288 (*Soukup*).)

Although it is unclear, the second amended complaint appears to allege Jordan engaged in protected activity by testifying truthfully in the Bryant and Chester actions, or by telling the County that he would not deny that he took photos at the crash site. The complaint then alleged that the County took adverse action against Jordan by issuing the Notice, refusing to

9

reimburse him for his attorney fees and costs, and denying him a retirement badge.

### a. The second amended complaint fails to plead a retaliatory employment action

Jordan cannot state a claim under Labor Code section 1102.5, subdivision (b), based on conduct that occurred after his employment relationship with the County ended in January 2021.  This includes the County's refusal to reimburse Jordan for the legal expenses he incurred in connection with the Bryant and Chester actions, and the denial of a retirement badge. Our Supreme Court has observed "that a prerequisite to asserting a violation of Labor Code section 1102.5 is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred." (*Soukup*, *supra*, 39 Cal.4th at p. 288; accord, *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1546 (*Hansen*).)  As a result, the Supreme Court concluded in *Soukup* that an action filed by an employer against a former employee, "even if it was in some broad sense retaliatory," did not violate Labor Code section 1102.5.  (*Soukup*, at p. 288.)  Similarly, the court in *Hansen* concluded that a retired employee could not state a claim against his former employer under Labor Code section 1102.5 where the employer allegedly defamed him "following his retirement in retaliation for complaints that he made during his employment." (*Hansen*, at p. 1545; see *id.* at p. 1546.)

Jordan contends that neither *Soukup* nor *Hansen* "addressed whether post-employment retaliation is actionable under Labor Code section 1102.5."  This is incorrect.  The *Soukup* and *Hansen* courts squarely addressed this question in the

10

context of SLAPP litigation.[7] (*Soukup, supra*, 39 Cal.4th at pp. 286–288 ["SLAPPback" action not exempt from scrutiny under anti-SLAPP statute where filing of underlying action against former employee was not retaliation for purposes of Lab. Code, § 1102.5]; *Hansen, supra*, 171 Cal.App.4th at p. 1545 [plaintiff failed to establish probability of prevailing on Lab. Code, § 1102.5 claim because alleged retaliation took place after he retired and was not actionable].) In contrast, *Robinson v. Shell Oil Co.* (1997) 519 U.S. 337, on which Jordan relies in arguing post-employment acts are actionable, does not concern Labor Code section 1102.5.

Thus, the only employment action at issue is the Notice. However, the County's issuance of the Notice in December 2020 could not be retaliation for Jordan's deposition and trial testimony which did not take place until November 2021 and August 2022, respectively. "As a matter of both logic and law, acts of retaliation must occur after the protected activity." (*Kourounian v. California Dept. of Tax & Fee Administration* (2023) 91 Cal.App.5th 1100, 1113.) To the extent Jordan seeks to rely on the allegation that he told the County that he would not deny taking photos at the crash site, the second amended complaint does not allege when Jordan made this statement. However, Jordan's government claim, which he attached to the second amended complaint, indicates that this conversation occurred after he was named as a defendant in the Chester action in May 2021, several months after the County issued the Notice. (*County of San Bernardino v. Superior Court* (2022) 77

---

[7] "SLAPP is an acronym for 'strategic lawsuit against public participation.' [Citation.]" (*Soukup, supra*, 39 Cal.4th at p. 268, fn. 1.)

Cal.App.5th 1100, 1107 [documents attached to and incorporated by reference in complaint " 'become a part of the complaint and may be considered on demurrer' "].)

It is apparent on the face of the complaint that there could be no causal link between the protected activity and the actionable alleged retaliatory conduct.

### b. The Labor Code cause of action is time-barred

Even if Jordan had alleged he engaged in protected conduct prior to the issuance of the Notice, Jordan's Labor Code claim would still fail because it is time-barred. " 'The Government Claims Act ([Gov. Code,] § 810 et seq.) "establishes certain conditions precedent to the filing of a lawsuit against a public entity. As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. ([Gov. Code,] § 911.2.) . . ." [Citation.] "[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action . . . . The failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity." [Citation.]' " (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118 (*Willis*).)

" 'Claims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action.' [Citation.] Accrual for purposes of the Act is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." (*Willis*, *supra*, 48 Cal.App.5th at p. 1118, fn. omitted.) "Generally, a ' "cause of action accrues 'when [it] is complete with all of its elements'—those elements being

wrongdoing, harm, and causation." [Citation.]' " (*Id*. at p. 1124.) "With certain exceptions ([Gov. Code,] § 905), the timely filing of a written government claim is an *element* that a plaintiff is required to prove in order to prevail on his or her cause of action. [Citation.] Thus, a complaint failing to allege facts demonstrating timely presentation of a claim or that such presentation was excused is subject to a general demurrer for not stating facts sufficient to constitute a cause of action." (*Id*. at p. 1119.)

The issuance of the Notice is the only adverse action the operative complaint alleged occurred while the County still employed Jordan. The County issued the Notice in December 2020. Jordan filed his government claim in November 2022. His claim was not presented within six months of accrual. Moreover, Jordan did not request leave to file a late claim. (Gov. Code, § 946.6, subd. (a).)

Jordan asserts that the continuing violation doctrine extends the accrual date of his claim. Specifically, he contends that the County's denial of his disability retirement and retirement badge after he retired were "similar in kind" to the County's issuance of the Notice, and the County's course of conduct did not acquire a degree of permanence until it denied Jordan a retirement badge.

"Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1198.) In the Fair Employment and Housing Act context, our Supreme Court stated

13

that the continuing violation doctrine applies "if the employer's unlawful actions are (1) sufficiently similar in kind—recognizing . . . that similar kinds of unlawful employer conduct . . . may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 (*Richards*).)  Courts have applied the same test to claims under Labor Code section 1102.5.  (E.g., *Willis*, *supra*, 48 Cal.App.5th at pp. 1126–1127.)

Even assuming post-employment actions by an employer, though not individually actionable, could extend the date on which a claim accrues, we conclude that the continuing violation doctrine would not apply here.  We need not decide whether the allegations of the second amended complaint satisfied the first two requirements of the continuing violation doctrine because they clearly did not satisfy the third.  Liberally construed, the second amended complaint failed to plead facts that, if true, would establish that the Notice only acquired a degree of permanence when the County formally denied Jordan his retirement badge.

Jordan alleged that he retained counsel to defend his rights four days after receiving the Notice.  This demonstrates that he understood " 'the continued existence of the adverse consequences of the act [was] to be expected without being dependent on a continuing intent to discriminate.' "  (*Richards*, *supra*, 26 Cal.4th at p. 814.)  Moreover, Jordan was "on notice that further efforts to end the unlawful conduct [would] be in vain" when he retired in January 2021 and his employment with the County ended.  (*Id*. at p. 823.)

14

### c. The new theories Jordan asserts on appeal likewise fail to state a Labor Code claim

Jordan advances two new theories in support of his Labor Code cause of action on appeal: 1) the County retaliated against him by denying his disability retirement in April 2021; and 2) the County is estopped from arguing that his claims are time-barred. The County contends Jordan waived these arguments by failing to raise them below. However, "the general rule barring new theories on appeal does not apply to appellate review of a trial court's order sustaining a demurrer." (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1316, fn. 4; accord, *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 464 ["There is no reason to deviate from the well-established rule that [Code of Civil Procedure] section 472c allows a plaintiff to propose new theories on appeal from the sustaining of a demurrer without leave to amend."].)

Jordan's first contention fails. The County's denial of his disability retirement could not be retaliation for Jordan's statement that he would not lie or for his testimony in the Bryant and Chester matters, all of which took place *after* April 2021. Moreover, the claim is time-barred because Jordan filed his original government claim more than six months after the County denied his disability retirement. For the reasons discussed above, the continuing violation doctrine would not apply to render timely a Labor Code claim based on the denial of Jordan's disability retirement.

Jordan's equitable estoppel argument likewise lacks merit. The doctrine of equitable estoppel has four elements: (1) the party to be estopped must be apprised of the facts; (2) it must

15

intend that its conduct be acted upon; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1359.) Estoppel will not apply if any element is missing. (*Id.* at p. 1360.)

Jordan asserts he could allege that he did not file a government claim earlier because of the County's offer to pay his attorney fees if he lied and denied taking photos at the crash site. However, the allegations of the complaint and the documents of which the trial court took judicial notice do not suggest that Jordan relied on this offer to his detriment. Jordan had hired his own attorney *before* the County allegedly offered to pay for his legal representation if he lied. The County's conditional offer did not deter him from seeking legal counsel and he promptly *rejected* the County's offer.

The County's alleged conduct in this case is readily distinguishable from the cases on which Jordan relies, in which the defendants intentionally prevented the plaintiffs from disclosing wrongdoing or obtaining legal representation. (See, e.g., *J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 334–335 [equitable estoppel applied where school district administrators repeatedly told minors' parents not to discuss molestation with anyone to avoid jeopardizing prosecution of offending teacher, causing parents to delay pursuing claims against district]; *Doe v. Bakersfield City School Dist.* (2006) 136 Cal.App.4th 556, 571–572 [evidence that guidance counselor continued to sexually abuse plaintiff and made repeated threats to humiliate plaintiff if he disclosed molestation over approximately eight years sufficient to support estoppel].)

16

## C. Jordan Fails to State a Claim for Retaliation in Violation of the First Amendment

"A claim for retaliation for engaging in protected speech under the First Amendment requires proof that (1) the person was subjected to an adverse action; (2) the person had engaged in speech that was constitutionally protected because it touched on a matter of public concern; and (3) the protected speech was a substantial motivating factor for the adverse action." (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 214.)

"Section 1983 [of title 42 of the United States Code] allows individuals to sue state actors for violating their federal constitutional or statutory rights. [Citation.] Section 1983 ' "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." ' [Citation.]" (*O'Dea v. Bunnell* (2007) 151 Cal.App.4th 214, 219.) Pursuant to *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Monell*, *supra*, 436 U.S. at p. 690, fn. omitted.) "Entity liability may arise in one of two forms": "an express government policy" or "a custom or practice so widespread in usage as to constitute the functional equivalent of an express policy." (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 328.) "Inasmuch as a section 1983 action is based on federal statutory law, a state court must look to federal law to determine the conduct which gives rise to an action under the statute." (*Greene v. Zank* (1984) 158 Cal.App.3d 497, 503; accord, *Arce v. Childrens*

*Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1472 [state courts look to federal law to determine what conduct will support an action under § 1983].) To plead a *Monell* claim, a complaint " 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.' " (*AE ex rel. Hernandez v. County of Tulare* (9th Cir. 2012) 666 F.3d 631, 637.)

The trial court concluded that the lawsuit did not concern a matter of public concern and failed to set forth sufficient allegations concerning the County's policies to hold the County liable under the *Monell* doctrine.[8] We focus on the court's conclusion that the second amended complaint failed to allege a County policy or custom of retaliation.

### a. The second amended complaint fails to allege sufficient facts to subject the County to liability under *Monell*

The second amended complaint alleged that the County retaliated against Jordan for filing a lawsuit seeking reimbursement of his attorney fees when it denied him a retirement badge. The complaint further alleged that it is "the longstanding policy, custom, and practice of the County of Los

---

[8] Jordan contends for the first time in his reply brief that *Monell* does not apply to his claims under the California Constitution. He forfeited this argument and any challenge to the trial court's ruling on his cause of action under the California Constitution by failing to raise the issues in his opening brief. (*McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 82, fn. 17 (*McCann*) ["we need not address claims not properly addressed in the opening brief"]; *In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 817.)

18

Angeles, and in particular the [Fire Department], to the point where it represented official policy, to retaliate against employees and former employees who exercised their rights to testify as a witness and to bring claims against the government, by, among other things, denying retirement badges as well as other rights and privileges." On appeal, however, Jordan contends that the protected activity for purposes of his constitutional retaliation claim was his refusal to lie about his conduct at the crash site and that the County retaliated by issuing the Notice and refusing to pay Jordan's legal fees, in addition to denying his request for a retirement badge.

Because the County issued the Notice before Jordan stated that he would not deny taking pictures at the crash site and before his deposition and trial testimony, his protected speech could not have been a substantial motivating factor in the issuance of the Notice. Thus, we only consider the County's refusal to pay Jordan's attorney fees and denial of the retirement badge in determining whether the County's alleged retaliation violated Jordan's constitutional rights.

The second amended complaint does not identify any written directive or standing order from a final policymaker related to the County's alleged retaliatory acts. It therefore fails to plead the existence of an express government policy. Liberally construed, the allegations of the second amended complaint are also insufficient to establish that the County's decision not to pay for Jordan's legal representation and its denial of his request for a retirement badge represented a longstanding policy or custom. The complaint does not identify any other employee or former employee against whom County or LACFD officials retaliated due to their testimony or filing of a lawsuit, state when such other

19

acts of retaliation occurred, provide the circumstances of the retaliation, or indicate whether such incidents were reported to the County. (*Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 918 (*Trevino*) ["Liability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."]; cf. *Lapachet v. California Forensic Med. Grp.* (E.D.Cal. 2018) 313 F.Supp.3d 1183, 1193 [denying motion to dismiss *Monell* claim because complaint contained specific factual allegations supporting existence of alleged policies and customs].)

Jordan contends that allegations of " 'multiple harms that occurred to the plaintiff himself' " can support his claim under *Monell*. (*Estate of Osuna v. County of Stanislaus* (E.D.Cal. 2019) 392 F.Supp.3d 1162, 1174.) However, liability for a custom or practice claim under section 1983 of title 42 of the United States Code "may not be predicated on isolated or sporadic incidents." (*Trevino*, *supra*, 99 F.3d at p. 918.) " 'Although '[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim,' [citation], 'where more than a few incidents are alleged, the determination appears to require a fully-developed factual record.' [Citation.]" (*Estate of Osuna*, at p. 1173.)

The two incidents of alleged retaliation—the County's refusal to pay for Jordan's legal representation in June 2021 and the County's denial of his request for a retirement badge in December 2022—took place a year and a half apart. (*Meehan v. County of Los Angeles* (9th Cir. 1988) 856 F.2d 102, 107 [two unconstitutional acts by county officials occurring three months apart not sufficient to show a custom or practice]; *Oyenik v. Corizon Health Incorporated* (9th Cir. 2017) 696 Fed.Appx. 792,

794 ["one or two incidents are insufficient to establish a custom or policy"]; cf. *Mitchell v. County of Contra Costa* (N.D.Cal. 2022) 600 F.Supp.3d 1018, 1029–1030 [*Monell* claim adequately pleaded where complaint alleged 15 lawsuits against county involving constitutional violations similar to those plaintiff asserted].)  In addition to being isolated in time, the two acts are dissimilar.  We conclude they are insufficient to plead that the County was on notice of an unconstitutional custom or policy.

Jordan asserts on appeal that he alleged incidents of retaliation involving high-ranking officials—namely, Marrone and McCloud—who "had final policymaking authority within [the LACFD]."  Municipal liability may be predicated on a single incident where the person causing the violation has " 'final policymaking authority,' " which is a question of state law.  (*St. Louis v. Praprotnik* (1988) 485 U.S. 112, 123.)  "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  [Citation.]  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. . . .  [M]unicipal liability under [42 U.S.C.] § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." (*Pembaur v. Cincinnati* (1986) 475 U.S. 469, 481–483, fns. omitted.)

The second amended complaint does not allege that Marrone took any retaliatory action against Jordan.  The only allegations concerning Marrone are that he instructed Jordan to

take photographs at the crash site and then denied that he did so in his testimony at the Bryant and Chester trial. Jordan does not identify Marrone's testimony as an act of retaliation that violated his constitutional right to free speech, nor does Jordan claim that Marrone was aware of or ratified any other retaliatory act alleged in the complaint. That Marrone, as acting fire chief, generally may have had final policymaking authority does not assist Jordan.[9]

The second amended complaint alleged that McCloud is a deputy fire chief, but it did not identify his responsibilities or assert that he had final policymaking authority with respect to the payment of legal fees for current or former employees. On appeal, Jordan does not advance any facts or legal authority to support the claim that McCloud had final policymaking authority in this or any other respect.

Finally, the second amended complaint alleged that "[LACFD] Risk Manager Julia Kim" sent the letter denying Jordan the retirement badge. Jordan did not allege, nor does he contend on appeal, that Kim had final policymaking authority. He also did not allege that any person with final policymaking authority participated in or ratified the decision to deny him a retirement badge. Jordan therefore failed to adequately plead

---

[9] See *Los Angeles Police Protective League v. Gates* (9th Cir. 1990) 907 F.2d 879, 890 [City of Los Angeles Police Chief has policymaking authority]; but see *Gillette v. Delmore* (9th Cir. 1992) 979 F.2d 1342, 1349–1350 [city manager and city council have final policymaking authority, but city fire chief does not].

that any of the retaliatory acts were taken by an official with final policymaking authority.[10]

The trial court properly sustained the demurrer as to the constitutional retaliation cause of action.

### D. The Trial Court Did Not Err in Sustaining the Demurrer to the Declaratory Relief Claim

Jordan conceded below, and concedes on appeal, that declaratory relief is a remedy, not a cause of action. Nevertheless, Jordan contends the court erred in sustaining the demurrer to this asserted cause of action because the facts alleged in the second amended complaint support a claim for declaratory relief regarding his entitlement to a retirement badge.

---

[10] Even if we considered the Notice as part of the *Monell* claim, our conclusion would be the same. The County issued the Notice six months before it declined to pay for Jordan's representation and two years before it denied him a retirement badge. Thus, the alleged acts of retaliation against Jordan would still be isolated and sporadic. Moreover, the operative complaint does not allege that a final policymaker issued or ratified the Notice. (*Linder v. Golden Gate Bridge* (N.D.Cal., Apr. 17, 2015, No. 14-CV-03861 SC) 2015 WL 1778608, at pp. *2, 6 [granting motion to dismiss where plaintiff alleged captain "initiated an Intent to Terminate memorandum" against him but made "nothing more than conclusory allegations that [the captain] was a final policymaker or that a final policymaker ratified her actions"]; see also *Ellins v. City of Sierra Madre* (9th Cir. 2013) 710 F.3d 1049, 1066 [affirming grant of summary judgment where plaintiff did "not allege that [final policymaker] knew that the decision was in retaliation for protected speech or that she ratified the decision despite such knowledge"].)

23

Jordan's citation to *Lee v. Bank of America* (1994) 27 Cal.App.4th 197, in support of this argument, is unavailing. In *Lee*, the court observed: "On demurrer . . . , the question is whether the facts alleged in the complaint might support any cause of action, even one not explicitly articulated in the document. If the complaint simply omitted to mention such a cause of action, the court should normally allow leave to amend so that it could be articulated." (*Id*. at p. 216.) Jordan does not contend that he "simply omitted to mention" a viable cause of action for which declaratory relief is a remedy. (*Ibid*.)

Moreover, the trial court also sustained the demurrer as to the request for declaratory relief because it was added without leave of court. This is sufficient to conclude that the trial court did not err. (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 [demurrer properly sustained as to causes of action not within scope of order granting leave to amend].)

## II. The Trial Court Did Not Abuse Its Discretion in Denying Leave To Amend

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.) " 'Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the

24

trial court abused its discretion when it sustained the demurrer without leave to amend.  [Citations.]'  [Citation.]" (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 580.)

In his opening brief, Jordan failed to advance arguments or facts to establish there is a reasonable possibility that he could amend his complaint to state a claim.  In his reply brief, Jordan contends his proposed third amended complaint would cure any defects in the second amended complaint, and the trial court abused its discretion by failing to address his proposed complaint in its order.  Jordan forfeited these arguments by failing to raise them in his opening brief.  (*McCann, supra,* 70 Cal.App.5th at p. 82, fn. 17.)

Even if we were to consider the arguments, the proposed addition of an allegation concerning an unfavorable transfer in May 2020 would not assist Jordan in stating a viable claim. Jordan did not file a written government claim concerning this transfer.  (Gov. Code, § 945.4 [no suit for money or damages may be maintained against a public entity unless a timely written claim has first been presented to it].)  Moreover, a May 2020 transfer also could not be retaliation for Jordan's statements and testimony in 2021 and 2022.  The trial court therefore did not abuse its discretion in denying Jordan further leave to amend.

25

## DISPOSITION

The judgment is affirmed. The County shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.